Filed 4/29/21  P. v. Olvera CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DAVID OLVERA,<br><br>  Defendant and Appellant. | D077419<br><br><br>(Super. Ct. No. FWV1102225-2) |

APPEAL from an order of the Superior Court of San Bernardino, Ingrid A. Uhler, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

David Olvera and co-defendants Amy Nicole Hillrich and Emilio Saldana were convicted of first degree murder in 2015.  As a result of the

enactment of Senate Bill No. 1437, on March 3, 2020, Olvera filed a pro per petition seeking resentencing. Olvera asserted he was entitled to relief because he was convicted on a theory of felony murder or murder under the natural and probable consequences theory. The trial court summarily denied the petition, finding Olvera failed to make a prima facie case for relief. Olvera appeals, asserting the court erred by denying the petition without providing him certain procedural protections set forth in Penal Code section 1170.95.[1]

Simultaneously with the filing of its respondent's brief, the Attorney General requested that this court take judicial notice of records in Olvera's prior appeal of his conviction. Olvera opposed the request and moved to strike the respondent's brief. As we shall explain, we grant that request for judicial notice and deny Olvera's related motion. We also reject Olvera's appellate arguments and affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of the murder are set forth in more detail in this court's prior opinion affirming the murder convictions of Olvera, Hillrich, and Saldana. (*People v. Olvera* (Dec. 18, 2017, D072618) [nonpub. opn.] (*Olvera*).) We recount a summary of the facts from that opinion here. Olvera, Hillrich, and Saldana worked together at a nursing facility. Hillrich was estranged from her husband and in a romantic relationship with Olvera. Hillrich and Olvera were good friends with Saldana and recruited him to participate in their plot to murder Hillrich's husband, John Hillrich. In the months leading to the crime, Hillrich frequently complained to another close friend at work that she was sick and tired of John and wanted him killed. John disapproved of

---

[1] Subsequent undesignated statutory references are to the Penal Code.

2

Hillrich's relationship with Olvera, and did not want Olvera and Saldana around the children he shared with Hillrich.

In the days after a heated argument between Hillrich and John, Hillrich sent incriminating text messages to Olvera and Saldana suggestive of the plot to murder John. On the day of the murder, cell phone records and text messages recovered by law enforcement showed the trio were stalking John's movements. The morning of the murder, Hillrich sent text messages to Olvera and Saldana that showed they were monitoring John's parking space at his office. The same morning, another woman known to be intimate with Olvera, and who worked at the same nursing facility, was at Olvera's house and saw a semi-automatic handgun on his coffee table. The woman also saw Saldana there.

While at work, the woman received a text message from Olvera asking to borrow her Ford F-250 truck, which had a large "Metal Militia" sticker on the left side. She agreed and left the keys in the truck for Olvera. Sometime after, the woman noticed the truck was no longer parked where she left it. Olvera did not return the truck for several hours and told her not to mention to anyone that he had borrowed it. During the timeframe Olvera had the F-250 truck and before the murder, John's secretary recognized the truck in the parking garage John used.

After the secretary noticed the truck, John left his office to pick up his children. Once John reached the parking garage, he was shot and killed. He died at the scene of multiple gunshot wounds. "Surveillance cameras in the garage recorded videos of a man, believed to be Saldana, exit the passenger side of the F-250 truck, approach John's BMW, run back to the F-250 truck, and the truck leave the parking structure …." (*Olvera, supra*, D072618.) The owner of the truck recognized the man in the surveillance video as Saldana.

Olvera's and Saldana's cell phone records also showed they were in the vicinity of the parking garage at the time of the shooting. Multiple witnesses heard the gunshots fired and identified the F-250 truck leaving the garage immediately after. One witness recorded the license plate of the truck, identified its occupants as two Hispanic men, and identified Olvera as the driver.

Olvera and Saldana were arrested later that day at a gas station. Their car contained a suitcase and duffel bag packed with clothes. Both men had gunshot residue on their hands. The investigation uncovered evidence linking the men to Hillrich. Hillrich's purse also contained incriminating notes describing the plot to murder John.

At the conclusion of the joint trial of Olvera, Hillrich, and Saldana, the jury convicted all three of the first degree murder of John (§ 187, subd. (a)). The jury also found true an allegation that in the commission of the murder a principal was armed with a firearm (§ 12022, subd. (a)(1)). With respect to Olvera and Hillrich, the jury was instructed on direct aiding and abetting and conspiracy to commit first degree murder, not on the natural or probable consequences doctrine or a felony murder theory. In addition, the trial court found true the allegation that Olvera suffered a prior strike conviction (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)). Thereafter, the court sentenced Olvera to 50 years to life plus one consecutive year for the firearm enhancement.

Olvera and his co-defendants appealed the conviction and on December 18, 2017 this court affirmed the judgment of all three defendants in an unpublished opinion. (*Olvera, supra*, D072618.) On March 3, 2020, Olvera filed a petition, in pro per, for resentencing in accordance with

4

section 1170.95. The following day, the trial court denied the petition and Olvera immediately appealed.

DISCUSSION

I

*Request for Judicial Notice & Motion to Strike Respondent's Brief*

Simultaneous with the filing of the respondent's brief, the Attorney General requested this court take judicial notice under Evidence Code sections 452, subdivision (d) and 459 of a portion of the appellate record in the defendants' earlier appeals. Olvera responded by opposing the request and filing a motion to strike the respondent's brief, asserting it did not comply with the rules of court because it was based on matters outside of the appellate record in this case. Thereafter, we issued an order indicating the request for judicial notice and motion to strike would be considered concurrently with the merits of the appeal.

Olvera argues the request for judicial notice is a "thinly veiled attempt to augment the record on appeal with materials not before the trial court …." In support, he points to case law standing for the general proposition that appellate courts generally do not take judicial notice of evidence not presented to the trial court and the trial court's order denying his petition does "not disclose what materials the court reviewed." Olvera further argues that the request for judicial notice of this court's prior opinion is improper because the opinion is "inadmissible hearsay."

Contrary to Olvera's assertions, however, appellate courts routinely take judicial notice of the records of their own cases under Evidence Code

5

sections 452, subdivision (d) and 459.[2] (See, e.g., *Rel v. Pacific Bell Mobile Services* (2019) 33 Cal.App.5th 882, 886 ["On our own motion, we take judicial notice of [two prior opinions in same case] as well as the underlying appellate records. (See Evid. Code, § 452, subd. (d).)"]; *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 769, fn. 7 [taking judicial notice of related appeal in writ proceeding]; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1 ["We take judicial notice of the record on appeal filed in this court in [prior appeal in same case], as well as of this court's unpublished opinion in that matter. (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)"].) Accordingly, we reject Olvera's assertion that the Attorney General's request is improper and grant the request. Because Olvera's motion to strike is based solely on his argument that this court should not take judicial notice of the prior appellate record, we also deny the motion.

## II

### *Trial Court's Dismissal of Olvera's Petition*

Olvera contends that the trial court's dismissal of his petition ran afoul of the statutory requirements of section 1170.95. Specifically, Olvera argues that because his petition was facially valid, i.e. he checked the boxes on the

---

[2] Evidence Code section 452 describes matters of which a trial court may take permissive judicial notice. Subdivision (d) of the statute provides for judicial notice of the "[r]ecords of (1) any court of this state or (2) any court of record of the United States or of any state of the United States." Evidence Code section 459 provides authority for reviewing courts to take judicial notice in accordance with Evidence Code section 452. (Evid. Code, § 459, subd. (a) ["The reviewing court shall take judicial notice of (1) each matter properly noticed by the trial court and (2) each matter that the trial court was required to notice under Section 451 or 453. The reviewing court may take judicial notice of any matter specified in Section 452. The reviewing court may take judicial notice of a matter in a tenor different from that noticed by the trial court."].)

form petition showing his eligibility for relief under the changes to the law, section 1170.95 obligated the trial court to appoint counsel and receive the People's response before ruling on the petition.

## A

To protect the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability," the Legislature enacted Senate Bill No. 1437. (Stats. 2018, ch. 1015, § 1, subd. (d).) The legislation narrows the scope of liability under the felony-murder rule and under the natural and probable consequences doctrine. The law also provides a mechanism, section 1170.95, by which individuals convicted under the old standards can petition for resentencing if they could not be convicted under the new, narrower standards.

"Under the felony-murder rule as it existed prior to Senate Bill [No.] 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state. (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.) ' "The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life." ' (*Id.* at p. 1184.) 'The purpose of the felony-murder rule [was] to deter those who commit[ted] the enumerated felonies from killing by holding them strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony.' " (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248, review den. Feb. 19, 2020, S259835 (*Lamoureux*).)

"Independent of the felony-murder rule, the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense. (*People v. Chiu* (2014) 59 Cal.4th 155, 161–162 (*Chiu*).) ' "Because the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime." ' " (*Lamoureux, supra*, 42 Cal.App.5th at p. 248.)

As noted, Senate Bill No. 1437 also established a resentencing mechanism by adding section 1170.95. (Stats. 2018, ch. 1015, § 4.) Subdivision (a) of section 1170.95 specifies the resentencing eligibility criteria, which generally require that (1) the charging document must have asserted a felony-murder or natural and probable causes doctrine theory; (2) the petitioner must have been convicted of first or second degree murder; and (3) "[t]he petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019" by Senate Bill No. 1437. Subdivision (b) of the statute specifies the information the petition must contain, which includes (1) a declaration by the petitioner that he or she meets the eligibility criteria set forth in subdivision (a); (2) the superior court case number and year of conviction; and (3) "[w]hether the petitioner requests the appointment of counsel."

Subdivision (c) of section 1170.95, at issue here, specifies the prima facie review process the trial court must employ: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has

8

requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Subdivision (d) of section 1170.95 specifies the manner in which the trial court shall conduct the order-to-show-cause hearing (unless the parties waive a hearing and stipulate that the petitioner is entitled to be resentenced). (§ 1170.95, subd. (d)(1) & (2).) If the parties do not waive the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The parties "may rely on the record of conviction or offer new or additional evidence." (*Ibid*.) If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner resentenced "on any remaining counts in the same manner as if the petitioner had not been previously been [sic] sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1); see *Lamoureux, supra*, 42 Cal.App.5th at p. 249.)

"We review de novo questions of statutory construction. [Citation.] 'Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.' " (*People v. Law* (2020) 48 Cal.App.5th 811, 819, review granted July 8, 2020, S262490 (*Law*).) "As appellate courts generally do, we apply a deferential standard of review in determining whether the evidence supports any of the superior court's factual findings." (*People v. Rodriguez* (2020) 58 Cal.App.5th

9

227, 238, review granted March 10, 2021, S266652.)  Finally, if procedural error under section 1170.95 is established, the error requires reversal only if it is prejudicial.  (*Id*. at p. 245.)

B

Olvera contends section 1170.95 confined the trial court to conducting a purely facial review of the factual assertions in the petition and that the court was required to accept those assertions as true.  Thus, according to Olvera, the court erred by looking behind those allegations to determine he was ineligible.  We disagree.

As Olvera points out, this interpretation of the statute has been rejected by several other appellate courts.  The first to reject this position, *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 (*Lewis*), observed there are several "analogous situations [in which] trial courts are permitted to consider their own files and the record of conviction in evaluating a petitioner's prima facie showing of eligibility for relief."  (*Id*. at p. 1137.)  These include petitions to reclassify a conviction under the Safe Neighborhoods and Schools Act (Proposition 47), petitions for resentencing under the Three Strikes Reform Act of 2012 (Proposition 36), and petitions for writs of habeas corpus.  (*Id*. at pp. 1137–1138.)

*Lewis* explained the sound policy behind this approach:  " 'It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief.  For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument

10

based on the felony murder rule or [the natural and probable consequences doctrine], … it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing.' " (*Lewis, supra*, 43 Cal.App.5th at p. 1138, review granted, quoting Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) 23:51(H)(1), pp. 23–150 to 23–151.)

Applying these principles, *Lewis* concluded the trial court "could, and properly did, consider the record of defendant's conviction"—including the appellate court's prior opinion in the petitioner's direct appeal—when conducting its prima facie eligibility review. (*Lewis, supra*, 43 Cal.App.5th at p. 1137, review granted.) After *Lewis*, the majority of courts to consider the issue have similarly concluded that trial courts may look beyond the face of the petition to the record of conviction to determine whether the petitioner has stated a prima facie case for eligibility. (See *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493 (*Verdugo*) ["documents in the court file or otherwise part of the record of conviction that are readily ascertainable … should … be available to the court in connection with the first prima facie determination required by subdivision (c)"]; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011 (*Torres*) ["the trial court is permitted to review information that is readily ascertained"]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 (*Cornelius*) [same]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673–674, review granted July 8, 2020, S262481 [same]; and *People v. Tarkington* (2020) 49 Cal.App.5th 892, 896–898, review granted Aug. 12, 2020, S263219 [same].)

We find these courts' reasoning persuasive and likewise hold that trial courts may look beyond the face of a petition when determining whether a

11

petitioner has stated a prima facie case of eligibility for resentencing under section 1170.95.

C

Olvera next contends section 1170.95, subdivision (c) required the trial court to appoint counsel before its prima facie determination. *Lewis* rejected this interpretation of the statute, reasoning that because section 1170.95 as a whole is laid out chronologically, subdivision (c) should be read the same. (*Lewis, supra*, 43 Cal.App.5th at p. 1140, review granted. ) Under this logic, *Lewis* concluded the right to counsel does not arise until after the court has made its prima facie eligibility determination: "Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief.' " (*Lewis,* at p. 1140; see also *Verdugo, supra*, 44 Cal.App.5th at p. 332, review granted ["The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence:  first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties."]; *Torres, supra*, 46 Cal.App.5th at p. 1173, review granted ["We disagree with [the appellant]'s broad assertion that a trial court may not summarily deny a petition on the basis of the record of conviction prior to appointment of counsel and briefing"]; *Cornelius, supra*, 44 Cal.App.5th at p. 58 [succinctly holding that a petitioner is not

entitled to appointed counsel if the petitioner "is indisputably ineligible for relief"].)

Other Courts of Appeal have rejected this statutory interpretation, and the issue is currently pending review by the California Supreme Court in *Lewis*. (See, e.g., *Lewis*, March 18, 2020 order granting review (S260598) ["The issues to be briefed and argued are limited to the following: (1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) *When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)*." (Italics added)].) Of note, *People v. Cooper* (2020) 54 Cal.App.5th 106 (*Cooper*), cited by Olvera, disagreed with *Lewis* and its progeny and held all properly pleaded petitions entitle a petitioner to counsel. "In the *Cooper* court's view, section 1170.95, subdivision (c)'s first sentence is … 'a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences ... specify the procedure in undertaking that task,' meaning there is only one prima facie review before an order to show cause issues. (*Cooper*, at p. 118.) Thus, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any review under section 1170.95, subdivision (c)." (*People v. Harris* (2021) 60 Cal.App.5th 939, 952.)

Recognizing this split of authority, we decline to reach a decision on which interpretation of the statute is correct. Even those cases that interpret the statute to provide a right to appointed counsel before the court makes its prima facie determination recognize that failure to do so may be harmless error if the incontrovertible facts established by the record of conviction show the petitioner is not entitled to relief. (*See, e.g.*, *People v. Daniel* (2020) 57

Cal.App.5th 666, 674, *Cooper, supra*, 54 Cal.app.5th at p. 123, and *Law, supra*, 48 Cal.App.5th at p. 826, review granted.) As set forth in the next section, such is the case here. Because the trial court properly determined the allegations in Olvera's 1170.95 petition are contrary to the uncontroverted facts, the denial of counsel did not, as Olvera argues, violate his constitutional rights to the assistance of counsel or due process.

D

To make a prima facie showing of eligibility for resentencing under Senate Bill No. 1437, Olvera had to establish that he "could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) The changes made by the legislation, however, did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*); see *Chiu, supra*, 59 Cal.4th at p. 167 [a direct aider and abettor 'acts with the mens rea required for first degree murder'].) One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Lewis, supra*, 43 Cal.App.5th at p. 1135, review granted.)

Guilt as a direct aider and abettor requires: (1) knowledge of the direct perpetrator's intent to commit the crime; (2) intent to assist in committing the crime; and (3) conduct that in fact assists in committing the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *McCoy, supra*, 25 Cal.4th at p. 1117.) The defendant must not only know the direct perpetrator's intent, he must share that intent. (*People v. Beeman* (1984) 35 Cal.3d 547, 560; *McCoy,* at p. 1118.)

14

Here, the trial court concluded that Olvera was a direct aider and abettor who was not tried under theories of felony murder or natural and probable consequences and, therefore, was not entitled to relief. The court found Olvera was not eligible for relief under section 1170.95 because, as a matter of law, he was *not* convicted of first degree murder under a now prohibited theory. As the Attorney General points out, "[a]fter participating in [Olvera and his co-defendants'] trial and reviewing the record of conviction, it was apparent to the trial court that [Olvera] was tried as a direct aider and abettor who, with the intent to kill, participated in the premeditated murder of the victim." Olvera's representations in his petition to the contrary are indisputably false. Tellingly, Olvera makes no argument here that he would be entitled to relief had the trial court appointed counsel and waited for additional briefing.[3]

"Where the record of conviction precludes any reasonable factual dispute over defendant's ineligibility for relief, it would be a waste of judicial resources to require appointment of counsel and briefing." (*People v. Falcon*

---

[3] Olvera also asserts that the trial court was prohibited from relying on this court's earlier opinion in the case because it constitutes inadmissible hearsay. As alluded to in Section I *ante*, this argument is not well taken. In postconviction proceedings "statements from prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial. (See, e.g., *People v. Guilford* (2014) 228 Cal.App.4th 651, 660–661 [proper to rely on prior appellate opinion when ruling on section 1170.126 resentencing petition]; *People v. Saelee* (2018) 28 Cal.App.5th 744, 756 [reliable hearsay may be considered in deciding Prop. 64 petition to recall felony sentence for a marijuana conviction and to resentence as a misdemeanor]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1094–1095, [reliable hearsay may be considered at eligibility hearing under Prop. 47].) The rules of evidence governing section 1170.95 proceedings 'should be no different than those applied at other analogous postconviction resentencing proceedings.' (*People v. Williams* (2020) 57 Cal.App.5th 652, 661.)" (*Harris, supra*, 60 Cal.App.5th at pp. 953–954.)

15

(2020) 57 Cal.App.5th 272, 278, review granted Jan. 27, 2021, S266041.) The trial court properly found that Olvera could not make a prima facie showing that he was convicted of first degree murder under either a felony murder theory or natural and probable consequences theory without the need to appoint counsel or have the parties brief the issue.[4]

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DATO, J.

---

[4] We also are not persuaded by Olvera's argument that the trial court's failure to indicate which documents within the record of conviction it relied requires reversal. Olvera's record of conviction and the documents we take judicial notice of, including our prior opinion, make clear that Olvera's petition is meritless.